ORIGINAL

RECEIPT NUMBER
509510

UNITED STATES DISTRICT COURT

IN THE EASTERN DISTRICT OF MICHIGAN

PAUL BROWN, WILLIAM FANALY,
CHARLES THOMAS, GARY RIGGS,
ROBERT ORLIKOWSKI, SCOTT WAY,

Plaintiffs,

v

CASSENS TRANSPORT COMPANY and
CRAWFORD & COMPANY, foreign
corporations, and DR. SAUL MARGULES,

Defendants.

```
JUDGE : Borman, Paul D.
DECK  : S. Division Civil Deck
DATE  : 06/22/2004 @ 14:20:05
CASE NUMBER : 2:04CV72316
CMP PAUL BROWN ET AL V CASSENS
TRANS ET AL (DQH)
```

There is no other pending or resolved civil
action arising out of the same transaction
or occurrence as alleged in the complaint.

MAGISTRATE JUDGE CAPEL,

FILED
'04 JUN 22 P2:26
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT-PSG

Marshall Lasser P25573
MARSHALL LASSER PC
Attorney for plaintiffs
P.O. Box 2579
Southfield MI 48037
248-647-7722

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Federal question jurisdiction is conferred by plaintiffs' claims under the Federal

Racketeer Influence and Corrupt Organizations Act, 18 USC §1961 et seq (RICO). Diversity of

citizenship jurisdiction is conferred by 28 USC §1332 (plaintiffs are citizens of Michigan,

defendants are citizens of other states, and the amounts in controversy exceed $75,000). Pendant

jurisdiction of state claims is conferred by 28 USC §1367.

1

2.     Venue is properly laid in the Federal District Court for the Eastern District of Michigan because plaintiffs reside in that district and defendants do business in person and through their agents and representatives in that district, in Wayne and Oakland Counties, Michigan.   Dr. Saul Margules does business in Macomb County, MI, and resides within the jurisdiction of this court.

## PARTIES

3.     Plaintiffs Paul Brown, Robert Orlikowski, Gary Riggs and William Fanaly reside within the jurisdiction of the court.   Charles Thomas resides in Pennsylvania.   Scott Way resides in Three Rivers MI. All plaintiffs were or are employees of Cassens Transport Company in Wayne and Macomb Counties, Michigan.   Cassens Transport and Crawford & Company are corporations domiciled outside Michigan.   Cassens Transport is engaged in the business of interstate transportation of new cars, trucks and SUVs.   Dr. Saul Margules does business in Macomb County, MI, and resides within the jurisdiction of this court.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4.     Cassens Transport employed each of the plaintiffs.   It complied with its obligation, arising under the Michigan Workers Disability Compensation Act, MCL 401.101 et seq (herein "the Act"), to provide its Michigan employees Michigan workers disability compensation insurance, either by signing a contract of insurance with Crawford & Company or by self-insuring. Crawford & Company adjusted workers compensation claims made by Cassens' employees.

5.     Decisions regarding paying claims or terminating payment were made jointly by defendants, or were made by Crawford & Company after consulting with Cassens, or were ratified by Cassens after being made by Crawford.   These allegations are based on information and belief,

2

doctors had over many years received substantial income from defendants and their attorneys. Cassen's and Crawford's past payment of large sums of money for doing "cut off" reports in workers compensation litigation and the express or implied promise of future payment of money for doing such reports constituted corrupt persuasion, misleading conduct and obstruction of justice within the meaning of 18 USC 1512. Defendants used electronic and mail communications in furtherance of defendants' scheme of fraud, in violation of 18 USC 1341, 1343 and 1512. This fraud was also accomplished by defendants deliberately ignoring communications from objective doctors, trained in orthopedic medicine and other specialities, indicating plaintiffs did have work-related disabilities. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

C. Plaintiffs' damages were proximately caused by defendants' scheme of fraudulently and dishonestly denying workers compensation benefits. Mail and electronic communications were used by defendants in furtherance of the scheme. Some of these communications contained fraudulent representations to plaintiffs, but others did not. Defendants' use of mail and electronic communications in furtherance of their scheme of fraud violated 18 USC 1341 and 1343, regardless of whether those communications contained fraudulent misrepresentations relied upon by plaintiffs.

D. Some of the acts of mail and wire fraud consisted of communications between defendants, or between defendants and the IME "cut off" doctors whose reports defendants relied upon in terminating or denying plaintiffs' benefits, which plaintiffs do not have. In these communications, defendants discussed means of cutting off plaintiffs' benefits or forcing them to take settlements at less than true value, even though defendants possessed medical reports from treating doctors and doctors chosen by defendants stating plaintiffs did have work-related

4

and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery. The persons with decision power at Cassens and Crawford formed an "enterprise" for purposes of the Racketeer Influenced and Corrupt Organizations Act (RICO).

6. A. One or more of these persons committed mail fraud, wire fraud and or conspiracy to defraud, in a repeated and continuing pattern, by fraudulently denying benefits. This fraud was accomplished in part by use of the United States mails and by electronic communications in violation of 18 USC 1341 and 1343, by and in violation of MCL 750.280. Some of these electronic and mail communications did not contain fraudulent misrepresentations, as fraudulent misrepresentations were merely one of the means by which defendants achieved their scheme of fraud. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

B. This fraud was also accomplished in part by Cassens and Crawford deliberately selecting doctors such as Dr. Saul Margules to get a medical opinion which defendants could use to deny benefits to plaintiffs, rather than to get an objective opinion from a qualified specialist to help defendants decide whether plaintiffs were entitled to benefits. Crawford, Cassens and their attorneys knew Dr. Margules was a family doctor who was not trained or certified in orthopedic medicine, although most of the injuries suffered by Cassens employees were within the field of orthopedic medicine, as they involved bones, joints and muscles. Crawford, Cassens and their attorneys knew Margules and other doctors they employed to examine plaintiffs and other drivers were "cut off" doctors, that is, doctors upon whom Crawford and Cassens could rely for opinions which they could cite as grounds for cutting off or denying benefits, either by stating plaintiffs were able to work, or, if disabled, their injury was not work related. Dr. Margules and these other

3

disabilities. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

7. At all times and in all actions plead in this complaint, Crawford & Company was acting as agent for, or in concert with, Cassens Transport.

## RICO COMPLAINT OF WILLIAM FANALY AGAINST DEFENDANTS

8.    On Dec. 12, 2001, William Fanaly injured his right foot during the course and scope of employment with Cassens, while he was to his Cassens car-hauling truck. He missed work and sustained medical bills and wage loss due to this injury. On Dec. 14, 2001, plaintiff reported the injury to defendants, and requested workers compensation benefits. Plaintiff reported that he was coming out of the motel where he had parked the Cassens truck and stayed overnight (he was on an interstate trip with the company truck, driving from Detroit, MI, to Fenton, MO). He reported that he was walking to the truck to get into it to drive it to Cassen's terminal when he missed a step and fell, injuring his foot. Crawford's claim adjuster, Tina Litwiller, denied the claim, stating to plaintiff on the telephone in an interstate conversation from St. Louis, MO, to Detroit, MI, that because the injury happened at a motel, it did not happen on the job.

9.    On Dec. 19, 2001, Tina Litwiller, a claim adjuster for Crawford & Company in St. Louis, MO, sent to plaintiff in Westland MI, via the US mail, a Notice of Dispute concerning the injury of Dec. 12, 2001, which stated that workers compensation benefits were denied because "injury not work related." This statement and the earlier telephone statement were fraudulent communications in violation of 18 USC sections 1341 and 1343 because the corporate defendants knew that an injury which happens to an employee while he is leaving his motel during the course

5

and scope of employment is an injury which is compensable under the Act.

10.  On Feb. 17, 2002, plaintiff dislocated his left shoulder while loading his Cassens car-hauling truck, and he missed work and sustained medical bills and wage loss due to this injury. Plaintiff filed a claim for benefits under the Michigan Workers Disability Compensation Act, MCL 481.101 et seq.

11.  Defendants sent plaintiff for examinations to Dr. Saul Margules.  Defendants sent plaintiff for examinations to Dr. Saul Margules.   Defendants have a long-standing business relationship with Dr. Margules.  For many years, defendants have sent dozens of Cassens workers to him for opinions on whether the workers had job-related disabilities.  Dr. Margules is board certified only in family medicine.   He works in Macomb County, MI.

12.  Defendants expressly or implied communicated to Dr. Margules that it wanted him to write reports stating plaintiff was not disabled due to work-related injuries, regardless of the true circumstances.   Defendants' actions violated 18 USC §1341, 1343, and 1512.   These communications were by mail and wire and are not in the possession of plaintiff but are in the possession of defendants.  This allegation is based in part on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

13.  In February or March, 2002, Margules opined to defendants that plaintiff had no job-related disability relating to his shoulder.

14.  On Feb. 21, 2002, Tina Litwiller, a claim adjuster for Crawford & Company in St. Louis, MO, sent to plaintiff in Westland MI, via the US mail, a Notice of Dispute concerning the shoulder injury of 2/17/02, which stated that workers compensation benefits were denied because "condition is chronic - per Dr. Marglious [sic]."

15. This fraudulent statement via the mail violated 18 USC section 1341.

16. Defendants' statements were fraudulent because the chronicity of a condition is not a legal basis for denial of benefits, and because defendants had proof that plaintiff injured his shoulder during the course and scope of employment. Also, the corporate defendants knew or should have known Dr. Margules' opinion was an unreliable basis for denial of benefits, because Dr. Margules was not an expert in orthopedic conditions, because Dr. Margules was biased due to the amount of money defendants paid him over the years to examine Cassens workers and to testify against them in workers compensation cases, and because plaintiff's treating surgeons opined, based on what they saw in exams and during surgery, that plaintiff's pathology was work-related.

16A If, in fact, Margules opined to the other defendants that plaintiff had no job-related disability. Margules' actions violated 18 USC §1512. This communication was by mail and wire and are not in the possession of plaintiff but are in the possession of defendants. This allegation is based in part on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

17. Plaintiff relied on the fraudulent communications to the extent he suffered the financial loss of having to pay attorney fees, medical care and medical mileage. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical care and mileage to and from medical care.

18. At all times and in all actions plead in this complaint, Crawford & Company was acting as agent for, or in concert with, Cassens Transport. Decisions regarding paying claims or terminating payment were made jointly by defendants, or were made by Crawford after consulting

with Cassens, or were ratified by Cassens after being made by Liberty. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

19.     This cause of action arises under 18 USC 1961, 1962, 1964 and 1965. The allegations made herein are based on the facts alleged herein, on information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. With regard to allegations concerning the enterprise, pattern of conduct, predicate acts and other offenses, William Fanaly incorporates herein the pleadings of the other plaintiffs, and relies also on statements made and actions taken by defendants with regard to the claims of James Lambrich, Mark West, David Slayton and other Cassens employees.

20.     Cassen's and Crawford's workers compensation officials formed an "enterprise" within the meaning of the RICO Act, which engaged in a pattern of racketeering aimed at fraudulently denying workers compensation benefits to the plaintiffs in this suit, and to other employees of Cassens. Alternatively, the enterprise consisted of defendant's workers compensation officials plus Dr. Margules. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

21.     Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of UPS who are entitled to Michigan workers compensation benefits..

WHEREFORE William Fanaly demands judgment against defendants for damages measured by the amount of benefits improperly withheld from him, plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law.

8

## RICO COMPLAINT OF CHARLES THOMAS AGAINST CRAWFORD & COMPANY
## AND CASSENS TRANSPORT

22.      Plaintiff Charles Thomas was working within the course and scope of his employment with Cassens Transport on April 16, 2001, when he pulled on a tie-down bar and tore the rotator cuff in his right shoulder. He made a workers compensation claim with Crawford & Company and Cassens (the corporate defendants). On or about Jan. 10, 2002, he gave to Bill Molter, a terminal manger for Cassens, a claim form which contained in "Section 2 - Attending Physician's Statement" information that the rotator cuff tear arose out of plaintiff's employment, and that the injury occurred when "he attempted to pull a metal bar from above his head to waist level. It did not pull down easily and he had abrupt pain in his right shoulder." This Attending Physicians Statement was signed on Dec. 13, 2001, by Dr. Bailey of Meadville, PA.

23.  Despite having possession of this Attending Physician's Statement, Tina Litwiller of Crawford and Company, in St.Louis, MO, mailed via the US Postal Service, on or about 1/21/02, a Notice of Dispute to plaintiff denying workers compensation benefits and stating "no medical establishing causation."

24.    Litwiller's statement was fraudulent and in violation of 18 USC §1341 because she possessed a medical statement establishing causation.   Defendants also committed mail fraud in that their pleadings in the workers compensation case fraudulently denied that plaintiff suffered a work-related injury when they had knowledge that plaintiff had suffered a work-related injury.

25. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical care and mileage to and from medical care. Plaintiff relied on the communication to the extent he

suffered the financial loss of having to pay attorney fees, medical care and medical mileage.

26.   At all times and in all actions plead in this complaint, Crawford & Co was acting as agent for, or in concert with, Cassens Transport. Decisions regarding paying claims or terminating payment were made jointly by Cassens and Crawford, or were made by Crawford after consulting with Cassens, or were ratified by Cassens after being made by Crawford. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

27.   This cause of action arises under 18 USC 1961, 1962, 1964 and 1965. The allegations made herein are based on the facts alleged herein, on information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. With regard to allegations concerning the enterprise, pattern of conduct, predicate acts and other offenses, Charles Thomas incorporates herein the pleadings of the other plaintiffs, and relies also on statements made and actions taken by defendants with regard to the claims of James Lambrich, Mark West, David Slayton and other Cassens employees.

28.   The corporate defendants' workers compensation officials formed an "enterprise" within the meaning of the RICO Act, which engaged in a pattern of racketeering aimed at fraudulently denying workers compensation benefits to the UPS employees in this suit, fraudulently terminating those benefits, and extorting plaintiff to settle his workers compensation claim.

29.   Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of UPS who are entitled to Michigan workers compensation benefits..

WHEREFORE Charles Thomas demands judgment against Crawford & Company and

Cassens Transport for damages measured by the amount of benefits improperly withheld from him, plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law.

### RICO COMPLAINT OF PAUL BROWN AGAINST DEFENDANTS

30      On April 12, 2000, Paul Brown injured his left knee when he twisted his left leg climbing down off Cassen's car hauler, in the course and scope of employment. The injury to the knee was aggravated by work done through May 3, 2000. On Feb. 15, 2002, plaintiff injured his shoulders pulling on a tie-down bar with great force, and later that day he injured his right knee. He continued working until March 4, 2002, and continued work aggravated those conditions.

31      Plaintiff filed a claim for benefits under the Michigan Workers Disability Compensation Act, MCL 481.101 et seq.

32.  Defendants sent plaintiff for examinations to Dr. Saul Margules. Defendants have a long-standing business relationship with Dr. Margules. For many years, defendants have sent dozens of Cassens workers to him for opinions on whether the workers had job-related disabilities. Dr. Margules is board certified only in family medicine. He works in Macomb County, MI. Defendants expressly or implied communicated to Dr. Margules that it wanted him to write reports stating plaintiff was not disabled due to work-related injuries, regardless of the true circumstances. Defendants' actions violated 18 USC §1341, 1343, and 1512. These communications were by mail and wire and are not in the possession of plaintiff but are in the possession of defendants. This allegation is based in part on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

11

33.   Plaintiff's treating orthopedic surgeons, Drs. Mark Pinto and Billy Joe Page, both board-certified in orthopedic surgery, operated on plaintiff's knees and shoulders.    They wrote reports and gave depositions, based on their clinical exams and observations during surgery, stating that plaintiff had job-related disabilities due to pathology in his knees and shoulders. These reports and depositions were received by defendants, and provided a sufficient basis for payment of plaintiff's workers compensation claim.

34.   Margules opined to the other defendants that plaintiff had no job-related disability.  This communications was by mail and wire and are not in the possession of plaintiff but are in the possession of defendants.   This allegation is based in part on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

34A.   Margules opined to the other defendants that plaintiff had no job-related disability. Margules' actions violated 18 USC §1512. This communication was by mail and wire and are not in the possession of plaintiff but are in the possession of defendants.    This allegation is based in part on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

35.   On March 19, 2002, Tina Litwiller, a claim adjuster for Crawford & Company in St. Louis, MO, sent to Paul Brown in Pinckney MI, via the US mail, a Notice of Dispute (a form provided by the Michigan Department of Labor, Bureau of Workers Disability Compensation). The Notice of Dispute stated that workers compensation benefits were denied because "medical condition not work related."   This fraudulent statement via the mail violated 18 USC section 1341.

36.   Ms. Litwiller relied on the opinion of Dr. Margules to deny benefits.   Cassens joined in her decision or ratified it.

12

37.   The statement "medical condition not work related" was fraudulent.  Defendants knew or should have known this statement was false, or Crawford & Company and Cassens knew or should have known that Dr. Margules' opinion was an unreliable basis for denial of benefits, because Dr. Margules was not an expert in orthopedic conditions, because Dr. Margules was biased due to the amount of money defendants paid him over the years to examine Cassens workers and to testify against them in workers compensation cases, and because plaintiff's treating surgeons had opined, based on what they saw in exams and during surgery,  that plaintiff's pathology was work-related.

38.   Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical care and mileage to and from medical care.  Paul Brown relied on defendants' fraudulent statement and suffered the expense of having to pay attorney fees, medical bills and medical mileage, as well as loss of workers compensation wage loss benefits.

39.   After defendants denied plaintiff's workers compensation claim, the case proceeded to  a hearing.   The only medical evidence submitted by defendant was the deposition of Dr. Margules.  On March 20, 2003, the magistrate awarded benefits to plaintiff.  The order awarding benefits was mailed to all parties by the Michigan Bureau of Workers Disability Compensation/Board of Magistrates.   Defendants appealed the decision to the Michigan Workers Compensation Appellate Commission (WCAC) and began paying 70% weekly benefits, which they were obligated to pay during appeal under the Act..

40.   After March 20, 2003, Paul Brown and his health care providers submitted medical bills which arose during appeal and which were related to the conditions for which benefits were

13

awarded. Under MCL 418.862(2), defendants were obligated during appeal to pay these bills.

41. Tina Litwiller, told Janice Manning, on Nov. 5, 2003, Jodie Heselschwerdt on October 13, 2003, and Leatha LaForge on or about Nov. 1, 2003, via interstate telephone communications between St. Louis, MO, and Pinckney or Chelsea, MI, that she did not have to pay any medical bills during appeal. Manning, LaForge and Heselschwerdt are billing clerks for doctors, hospitals or pharmacies who provided medical care to plaintiff during appeal. Also, Litwiller told plaintiff in an interstate phone conversation between St. Louis, MO, and Pinckneya, MI, in April 2003, that she did not have to pay medical bills arising during appeal. Litwiller's statements were false and fraudulent because defendants knew they were obligated by law to pay medical bills arising during appeal.

41A. During the corporate defendants' appeal to the WCAC of plaintiff's award of benefits, plaintiff filed a motion to dismiss defendants' appeal on the ground that defendants failed to pay medical bills arising during appeal. Defendants opposed the motion, submitting various documents to the WCAC. On March 29, 2004, defendants submitted to plaintiff's counsel in Southfield, MI, and to the WCAC in Lansing, MI, via wire (facsimile) and the US mail, an affidavit of Kathy Connor, who identified herself as an adjuster at Crawford & Company in Missouri. Her affidavit stated inter alia, "We had been under the misimpression that only the 70% weekly benefits need be paid during the appeal in Michigan, but that misinterpretation has been corrected and all the past due medical expenses are now paid."   On April 7, 2004, defendants submitted to plaintiff's counsel in Southfield, MI, and to the WCAC in Lansing, MI, via wire (facsimile) and the US mail, an affidavit of Tina Litwiller, who identified herself as an adjuster at Crawford & Company in Missouri. Her affidavit stated inter alia, "I had been under the misimpression that only

14

the 70% weekly benefits need be paid during the appeal in Michigan, but that misinterpretation has been corrected and all the past due medical expenses are now paid." These statements were fraudulent because defendants and the affiants knew they were obligated by Michigan's worker's disability compensation act (the Act) to pay medical bills arising during appeal. These fraudulent statement via the mail and or wire violated 18 USC section 1341 and 1343.

42. Plaintiff relied on the fraudulent communications to the extent he suffered the financial loss of having to pay attorney fees, medical bills and medical mileage. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical bills and mileage to and from medical care.

43. At all times and in all actions plead in this complaint, Crawford & Company was acting as agent for, or in concert with, Cassens Transport. Decisions regarding paying claims or terminating payment were made jointly by defendants, or were made by Crawford after consulting with Cassens, or were ratified by Cassens after being made by Crawford. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

44. This cause of action arises under 18 USC 1961, 1962, 1964 and 1965. The allegations made herein are based on the facts alleged herein, on information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. With regard to allegations concerning the enterprise, pattern of conduct, predicate acts and other offenses, Paul Brown incorporates herein the pleadings of the other plaintiffs, and relies also on statements made and actions taken by defendants with regard to the claims of James

15

Lambrich, Mark West, David Slayton and other Cassens employees.

45.     Defendants' workers compensation officials formed an "enterprise" within the meaning of the RICO Act, which engaged in a pattern of racketeering aimed at fraudulently denying workers compensation benefits to the plaintiffs in this suit, and to other employees of Cassens. Alternatively, the enterprise consisted of defendant's workers compensation officials plus Dr. Margules. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

46.     Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of UPS who are entitled to Michigan workers compensation benefits..

WHEREFORE Paul Brown demands judgment against defendants for damages measured by the amount of benefits improperly withheld from him, plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law.

RICO COMPLAINT OF GARY RIGGS AGAINST

CASSENS TRANSPORT AND CRAWFORD & COMPANY

47. Gary Riggs worked for Cassens as a car hauler. In 2001, he was diagnosed as having a benign tumor. As a result of symptoms caused by the tumor, Dr. Martin Kornblum gave him a prescription for a handicap parking sticker.   Plaintiff had surgery for the tumor in 2001 and returned to work without restriction in 2001 or 2002. On Feb., 23, 2003, long after plaintiff returned to work, he slipped and fell within the course and scope of employment for Cassens. Another injury occurred at work on April 8, 2003. As a result of these two injuries, plaintiff Gary

Riggs has been unable to work. In July, 2003, his workers compensation attorney, John Charters, sent to Cassens and Crawford medical records concerning the tumor problem, including information concerning the prescription for a handicap sticker, which preceded the fall at work. Plaintiff was entitled to benefits under the Michigan Workers Disability Compensation Act, Cassens and Crawford began voluntarily paying workers compensation benefits.

48. On February 18, 2004, Tina Litwiller, claim adjuster for Crawford in St. Louis, MO, mailed via the US mail to plaintiff, in Marlette, MI, a Notice of Dispute, informing plaintiff that his workers compensation benefits were terminated.. This notice contained the statement, "waiting on handicap information, physician medical report in regards to disability." This statement was fraudulent, because Cassens and Crawford had been given by John Charters, in 2003, the information and reports. These fraudulent statement via the mail and or wire violated 18 USC section 1341 and 1343.

49. In March and April, 2004, Richard Lovernick, attorney for Cassens and Crawford, told John Charters that his clients had no legitimate basis to terminate plaintiff's benefits.

50. Plaintiff relied on the fraudulent communication to the extent he suffered the financial loss of having to pay attorney fees, medical bills and medical mileage. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical bills and mileage to and from medical care.

51. At all times and in all actions plead in this complaint, Crawford & Company was acting as agent for, or in concert with, Cassens Transport. Decisions regarding paying claims or terminating payment were made jointly by defendants, or were made by Crawford after consulting

17

with Cassens, or were ratified by Cassens after being made by Crawford.  These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

52.    This cause of action arises under 18 USC 1961, 1962, 1964 and 1965.  The allegations made herein are based on the facts alleged herein, on information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.  With regard to allegations concerning the enterprise, pattern of conduct, predicate acts and other offenses, Paul Brown incorporates herein the pleadings of the other plaintiffs, and relies also on statements made and actions taken by defendants with regard to the claims of James Lambrich, Mark West, David Slayton and other Cassens employees.

53.    Defendants' workers compensation officials formed an "enterprise" within the meaning of the RICO Act, which engaged in a pattern of racketeering aimed at fraudulently denying workers compensation benefits to the plaintiffs in this suit, and to other employees of Cassens.  Alternatively, the enterprise consisted of defendant's workers compensation officials plus Dr. Margules.  These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

54.    Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of UPS who are entitled to Michigan workers compensation benefits..

WHEREFORE Gary Riggs demands judgment against defendants Cassens Transport and Crawford & Company for damages measured by the amount of benefits improperly withheld from him, plus interest as provided by law, all tripled in accordance with RICO, together with attorney

18

fees and costs as provided by law.

## RICO COMPLAINT OF ROBERT ORLIKOWSKI AGAINST DEFENDANTS

55.   On or about November 6, 2000, Robert Orlikowski injured his left knee while employed as a car hauler by Cassens.   The injury was caused by trauma suffered that day and or by aggravation, caused by years of car-hauling work for Cassens, of degenerative arthritis arising from a 1980 injury to the left knee which did not occur while working for Cassens.   Plaintiff was disabled by the injury and required surgery. Under the Michigan Workers Disability Compensation Act, plaintiff was entitled to medical care and wage loss benefits injury caused by trauma at work and or by aggravation, caused by years of car-hauling work for Cassens, of degenerative arthritis arising from a 1980 injury to the left knee which did not occur while working for Cassens.

56.   Plaintiff reported the injury and was sent for examination to Dr. Saul Margules.   Dr. Margules examined plaintiff and immediately called Tina Litwiller; plaintiff overheard Dr. Margules talking on the phone to Litwiller.    After ending his conversation with Litwiller, Dr. Margules told plaintiff he could return to work without restriction., although plaintiff's knee was in pain and was swollen, and Dr. Margules knew plaintiff's job as a car hauler required repetitive climbing of ramps and ladders, repetitive squatting and kneeling, strenuous lifting, pushing and pulling, and walking on narrow ramps nine feet above ground.    Dr. Margules did not order an MRI.   His initial diagnosis was "acute knee strain," a diagnosis of injury which would entitle plaintiff to benefits under the Act. Two days later, on November 8, 2000, Dr. Margules made the diagnosis, "Severe abnormality of L. knee, not particularly work related.," and again released plaintiff for work without restriction.

57.   On or later than November 8, 2000, Dr. Margules reported to Cassens and Crawford:

19

In Conclusion:

On the basis of Mr. Orlikowski's prior surgery and degenerative changes noted in the knee, I can only conclude that he has severe arthritis with degenerative changes that are many years old. He sustained trauma to the left knee and required surgery several years ago. His present injury that of twisting his knee could not have caused the changes that are shown on the MRI. All other findings are of many years longstanding.

Twisting the knee would give pain in a severely arthritic knee, but not the rest of the findiings.

This statement was fraudulent in that it did not mention the acute strain to the knee and did not mention the possibility that the damage to the knee may be partly work related. It was further fraudulent in stating "his present injury that of twisting his knee could not have caused the changes that are shown on the MRI," when one or more of the meniscal tears shown on the MRI could have been caused by a twisting of the knee, according to objective and unbiased orthopedic expert opinion. These fraudulent statements via the mail and or wire violated 18 USC section 1341 and 1343.

58.   On November 21, 2000, Tina Litwiller, claim adjuster for Crawford in St. Louis, MO, mailed via the US mail to plaintiff, in Marlette, MI,  a Notice of Dispute, informing plaintiff that his workers compensation benefits were denied on the grounds "injury not work related" "based on opinion of authorized physician." This statement was fraudulent for reasons stated in paragraph 6, and because Litwiller, Cassens and Crawford knew plaintiff would be entitled to benefits if he had suffered an "acute knee strain" at work, or if plaintiff had a "severe abnormality" which was to some degree work related even if "not particularly work related," or if plaintiff's years of work for Cassens had contributed to arthritis arising from the 1980 non-work-related injury (a possibility not discussed in Dr. Margules' written report). Litwiller could have denied benefits on the ground

20

"further investigation required," but instead made the affirmative statement "injury not work related." These fraudulent statements via the mail and or wire violated 18 USC section 1341 and 1343.

59.   On or about November 20, 2000, plaintiff began treating with a board-certified orthopedic surgeon, Dr. Lawrence Ulrey who found plaintiff had a large amount of fluid in the left knee and very limited movement of the joint. He diagnosed knee pain exacerbated by recent injury and osteoarthritis.   He opined that when plaintiff twisted his knee, "either he exacerbated his pre-existing osteoarthriic condition or possibly had torn a cartilage or done something in the joint to stimulate all this fluid." Dr. Ulrey did arthroscopic surgery and found a medial meniscal tear and severe arthritis. He opined that the medical meniscal tear was "probably a new injury" and again opined that the arthritis had been aggravated or exacerbated by the incident at work. He also stated heavy manual labor of the type plaintiff did would cause arthritis to progress at a more rapid rate.  This testimony clearly

60.  Dr. Ulrey gave a deposition on June 20, 2002, in which he gave the opinions noted above. Despite having this information, Crawford and Cassens continued in their scheme to deny benefits.

61.  Plaintiff relied on defendant's fraudulent communication to the extent he suffered the financial loss of having to pay attorney fees, medical bills and medical mileage. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical bills and mileage to and from medical care.

62.   At all times and in all actions plead in this complaint, Crawford & Company was

21

acting as agent for, or in concert with, Cassens Transport. Decisions regarding paying claims or terminating payment were made jointly by defendants, or were made by Crawford after consulting with Cassens, or were ratified by Cassens after being made by Crawford. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

63.     This cause of action arises under 18 USC 1961, 1962, 1964 and 1965. The allegations made herein are based on the facts alleged herein, on information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. With regard to allegations concerning the enterprise, pattern of conduct, predicate acts and other offenses, Paul Brown incorporates herein the pleadings of the other plaintiffs, and relies also on statements made and actions taken by defendants with regard to the claims of James Lambrich, Mark West, David Slayton and other Cassens employees.

64.     Defendants' workers compensation officials formed an "enterprise" within the meaning of the RICO Act, which engaged in a pattern of racketeering aimed at fraudulently denying workers compensation benefits to the plaintiffs in this suit, and to other employees of Cassens. Alternatively, the enterprise consisted of defendant's workers compensation officials plus Dr. Margules. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

65.     Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of UPS who are entitled to Michigan workers compensation benefits..

WHEREFORE plaintiff demands judgment against defendants for damages measured by

22

the amount of benefits improperly withheld from him, plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law.

## RICO COMPLAINT OF SCOTT WAY AGAINST DEFENDANTS

66. On or about March 12, 2002, Scott Way hurt his low back at work when he fell off a truck and thereafter had stiffness in his low back and worked slower than usual because of this stiffness. Plaintiff received no treatment for this injury. On June 10, 2002, he was working slower than usual because of stiffness in the low back.

67. On June 10, 2002, plaintiff was standing on the ground, leaning his left hand on the hood of a car which was on the car hauler, standing on tip toes to reach a ratchet over his head with his right arm fully outstretched while twisting and bending at the waist, when he had a sudden sharp pain in his low back. His low back stiffness increased substantially between that event and the next morning. Plaintiff was able to complete his work that day and the next day, with assistance from fellow workers. Low back pain increased the next day, as a result of which he stopped working on June 11, 2002, and reported the injury to Cassens.

68. On June 12, 2002, plaintiff was sent by Cassens to Dr. Margules. Plaintiff did not complain of any radiating pain or other problems in the left leg, only of low back pain and stiffness. Dr. Margules, at 31200 Dequindre, Warren MI, examined plaintiff and mailed a report to Tina Litwiller, Crawford Insurance, po box 411280, St. Louis MO 63141, on June 19, 2002. The report's Comment and Conclusion sections concentrated only on MRI findings and concluded plaintiff's L4-5 disc herniation was not related to the incident of June 10, 2002. This report was fraudulent insofar as it was intended to serve as a basis for denial of plaintiff's workers compensation claim because (a) Dr. Margules knew plaintiff's low back pain may have been

caused by a work-related injury other than an L4-5 disc herniation, and this injury would qualify plaintiff for workesr compensation, and (b) Dr. Margules knew the L4-5 herniation may have been aggravated by the work incident even if not caused by that incident, and if it was aggravated, then plaintiff could qualify for workers compensation. The report was also fraudulent because Dr. Margules did not intend to examine plaintiff objectively but was biased and favored Cassens and Crawford because of the amount of money defendants paid him.

69.  Tina Litwiller, in St. Louis, MO, mailed to plaintiff in Three Rivers, MI, a Notice of Dispute on or about July 29, 2002, stating, "Based on Dr. Margules' 6/19/02 report and opinion, compensation is not being paid." This Notice of Dispute was fraudulent because (a) Litwiller knew plaintiff's low back pain may have been caused by a work-related injury other than an L4-5 disc herniation, and this injury would qualify plaintiff for workesr compensation, and (b) she knew the L4-5 herniation may have been aggravated by the work incident even if not caused by that incident, and if it was aggravated, then plaintiff could qualify for workers compensation. The report was also fraudulent because she knew Dr. Margules did not intend to examine plaintiff objectively but was biased and favored Cassens and Crawford because of the amount of money defendants paid him.

70.  Plaintiff relied on defendant's fraudulent communication to the extent he suffered the financial loss of having to pay attorney fees, medical bills and medical mileage. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical bills and mileage to and from medical care.

71.  At all times and in all actions plead in this complaint, Crawford & Company was

24

acting as agent for, or in concert with, Cassens Transport. Decisions regarding paying claims or terminating payment were made jointly by defendants, or were made by Crawford after consulting with Cassens, or were ratified by Cassens after being made by Crawford. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

72.    This cause of action arises under 18 USC 1961, 1962, 1964 and 1965. The allegations made herein are based on the facts alleged herein, on information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery. With regard to allegations concerning the enterprise, pattern of conduct, predicate acts and other offenses, Paul Brown incorporates herein the pleadings of the other plaintiffs, and relies also on statements made and actions taken by defendants with regard to the claims of James Lambrich, Mark West, David Slayton and other Cassens employees.

73.    Defendants' workers compensation officials formed an "enterprise" within the meaning of the RICO Act, which engaged in a pattern of racketeering aimed at fraudulently denying workers compensation benefits to the plaintiffs in this suit, and to other employees of Cassens. Alternatively, the enterprise consisted of defendant's workers compensation officials plus Dr. Margules. These allegations are based on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

74.    Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrating and involving a threat of continuing racketeering activity against employees of UPS who are entitled to Michigan workers compensation benefits..

25

WHEREFORE plaintiff demands judgment against defendants for damages measured by the amount of benefits improperly withheld from him, plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and costs as provided by law.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS OF ALL PLAINTIFFS AGAINST CASSENS TRANSPORT AND CRAWFORD & COMPANY

75.    Cassens Transport and Crawford & Company engaged in a "continuous pattern of harassment, abuse and unethical conduct," as that phrase was used in *Hailes v Liberty Mutual Ins Co*, no 215509, 1999 WL 33326762 (Mich App Dec. 28, 1999), and also fraudulent conduct, intentionally inflicting emotional distress on plaintiffs and on other Cassens employees (eg, Mark West, David Slayton, James Lambrich).  This conduct includes the acts alleged by each plaintiff in their complaints, above.

76.    Plaintiffs incorporate all prior paragraphs of this complaint.

77.    Defendants' conduct proximately caused injury to plaintiffs, causing them emotional distress, for which each plaintiff is entitled to damages exceeding $100,000.

WHEREFORE plaintiffs each demand damages from defendants in an amount exceeding $100,000.

### JURY DEMAND

Plaintiffs demand a jury trial.

Marshall Lasser PC, by
Marshall Lasser P25573
po box 2579, Southfield MI 48307 (248) 647 7722
Date:   June 21, 2004  F:\wp51\DOCS\cassens\Complaint

26

72316
Borman/we

JS 44 11/99 **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: WAYNE

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

## I. (a) PLAINTIFFS

PAUL BROWN, WILLIAM FANALY, CHARLES THOMAS AND GARY RIGGS ROBERT ORLIKOWSKI, SCOTT WAY

04-72316

**DEFENDANTS**

CASSENS TRANSPORT and CRAWFORD & COMPANY, foreign corporations, and DR. SAUL MARGULES

(b) County of Residence of First Listed: LIVINGSTON

26093

County of Residence of First Listed WAYNE
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) Attorneys (Name, Address and Telephone Number)

MARSHALL LASSER P25573
MARSHALL LASSER, P.C.
P.O. Box 2579
Southfield, MI 48037 248-674-7722

Attorneys (If Known) PAUL D. BORMAN

MAGISTRATE JUDGE CAPEL,

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☒ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21: 881 | 28 USC 157 | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of | | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| Overpayment and Enforcement of Judgment | ☐ 320 Assault, Libel And Slander | ☐ 368 Asbestos Personal Injury Product | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☒ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment | ☒ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 790 Other Labor | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Litigation | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC 1.332 (Diversity) 18 USC 1961 (Civil RICO)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

$ DEMAND

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE 6/22/04

SIGNATURE OF ATTORNEY OF RECORD
x Marshall Lasser /RH

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously discontinued or dismissed?    ☐ YES    ☒ NO

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued    ☐ YES    ☒ NO
   or dismissed companion cases in this or any other court, including state
   court?  (Companion cases are matters in which it appears substantially
   similar evidence will be offered or the same or related parties are present
   and the cases arise out of the same transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes: