# UNITED STATES DISTRICT COURT

## IN THE EASTERN DISTRICT OF MICHIGAN

PAUL BROWN, WILLIAM FANALY,
CHARLES THOMAS GARY RIGGS,
ROBERT ORLIKOWSKI, SCOTT WAY,

Case No.: 04-CV 72316
Hon. Paul D. Borman

Plaintiffs,

v

CASSENS TRANSPORT COMPANY
and CRAWFORD & COMPANY, foreign
corporations, and DR. SAUL
MARGULES,

Defendants.

PROOF OF SERVICE

The undersigned certifies that this instrument, together with all referenced attachments was served on all parties to this case and/or their attorneys of record at their respective addresses as disclosed by the pleadings on _10-18-04_ by the following method(s):

[X] U.S. Mail   [] Fax   [] Hand Delivered
[] Federal Express   [] UPS
[] Other:

Signature of Serve

---

Marshall Lasser P25573
MARSHALL LASSER PC
Attorney for plaintiffs
P.O. Box 2579
Southfield MI 48037
248-647-7722

Kendall B. Williams P27896
Timothy R. Winship P44779
The Williams Firm, P.C.
Attorneys for Defendant Dr. Saul Margules
8263 S. Saginaw Street #6
Grand Blanc, MI 48439
810-695-7777

Janet Lanyon P34844
Kenneth Zatkoff P40601
Attorneys for defendants Cassens
Transport Co and Crawford & Co
Dean & Fulkerson PC
801 W. Big Beaver Rd ste 500
Troy MI 48084
248 362 1300

---

## PLAINTIFFS' RESPONSE TO CASSEN'S MOTION TO DISMISS

## STATEMENT OF ISSUES PRESENTED

Plaintiffs incorporate Cassen's Statement of Issues Presented.

**STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

II.  PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT

*Lingle v Norge Div of Magic Chef,* 486 Us 399, 108 S Sct 1877, 100 L Ed. 410 (1988),

III.  PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE MCCARRAN FERGUSON ACT

*Humana v Forsyth,* 525 US 299, 119 S Ct 710, 142 L Ed 2d 753 (1999).

IV.  PLAINTIFFS HAVE STATED RICO CLAIMS UPON WHICH RELIEF MAY BE GRANTED

*Rotella v Wood,* 528 US 549, 120 S Ct 1075, 145 L Ed 2d 1047 (2000)

*Neder v United States,* 527 US 1 at 24, 119 S Ct 1827, 144 Lcd 2d 35 (1999)

V.  PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE DOCTRINE OF PRIMARY JURISDICTION

*Rouse v DaimlerChrysler Corp,* 300 F3d 711 (6th Cir 2002)

IV.  PLAINTIFFS' CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

*Hailes v Liberty Mutual Ins Co,* COA 215509, 1999 WL 33326762 (Mich App Dec. 28, 1999)

*Broadus v Ferndale Fastener Division,* 84 Mich App 593, 269 NW2d 689 (1978).

*Atkinson v Farley,* 171 Mich App 784, 431 NW2d 95 (1988).

## ARGUMENT

### I.  PLAINTIFFS AGREE WITH THE STANDARD OF REVIEW SET FORTH BY DEFENDANT IN ITS ARGUMENT I

### II.  PLAINTIFFS' CLAIMS ARE NOT PRE-EMPTED BY §301 OF THE LABOR MANAGEMENT RELATIONS ACT

Plaintiffs do not claim defendant deprived them of benefits provided by the collective bargaining agreement (CBA). Plaintiffs claims defendants deprived him of benefits provided by Michigan statute -- the Workers Disability Compensation Act (WDCA).   Because plaintiffs' claims are based on rights created by the WDCA and not on rights created by the CBA, their civil RICO and state tort claims are not pre-empted by section 301 of the Labor Management Relations Act.

Cassens self-insures for workers compensation.  Cassens is sued as self-insurer, not as employer.  Plaintiffs' dispute arises out Cassen's fraudulent denial of benefits in its status as self-insurer under the WDCA, not out of Cassen's denial of rights in its status as employer under the CBA. Cassen's role as employer irrelevant in this suit.

Michigan workers compensation benefits are due injured workers whether or not the workers are covered by a CBA.    Non-unionized workers are just as entitled to workers compensation benefits as unionized workers.  Cassen's CBA does not affect one jot or tittle of plaintiff's right to his statutory workers compensation benefits.

Plaintiffs' RICO and state law claims are not pre-empted by section 301 of the Labor

1

Management Relations Act, 29 USC 141 et seq. because no term of the CBA must be interpreted to decide whether plaintiffs were fraudulently denied their workers compensation benefits. No term of the CBA affects plaintiffs' statutory right to workers compensation benefits.

None of the cases defendant cited bear on this civil RICO suit or the state law claims. None involved a civil RICO or state law case pleading a fraudulent denial of statutory workers compensation benefits. None held that a RICO claim against an employer asserting fraudulent denial of workers compensation benefits is preempted. None involved a defendant in its role as self-insurer.

In fact, the one case defendant cited which comes closest to the facts of this case, *Lingle v Norge Div of Magic Chef,* 486 Us 399, 108 S Sct 1877, 100 L Ed. 410 (1988), provides huge support for plaintiff's argument that his civil RICO suit is not preempted. In *Lingle,* the Supreme Court held that plaintiff's claim for retaliatory discharge based upon a worker's exercising his rights under a state's workers compensation statute was not preempted by the Labor Management Relations Act, because it did not require an analysis of the labor contract. Similarly, Mr. Moon's claim that defendant was part of a scheme to fraudulently deprive him of workers compensation benefits provided by Michigan statute does not require analysis of the labor contract.

Cassens argues that preemption is proper where plaintiffs' claims are "substantially dependant on the analysis of a collective bargaining agreement." With regard to the medical examinations plead in the complaint, Cassens states that "an employee's rights in connection with such examinations are... governed by the collective bargaining agreement applicable to plaintiff." This is a false statement. An employee's rights "in connection with such examinations" are governed by §385 and §315(1) of the WCDA, exhibit 1. Cassen's brief does not even mention

2

these sections  §315(1) empowers Cassens and Crawford, as self-insurer and adjuster, to select the treating doctor for the first ten days after injury, and §385 empowers defendants to send the worker to an examining doctor. If an employee claims Cassens or Crawford violated his rights under an examination conducted pursuant to either of these sections, *he always presents his claim to the Workers Compensation Agency and never to a grievance panel set up by the CBA.*

Cassens knows this. It made a false argument to mislead the court. Sanctions should be imposed on Cassens for fraudulently claiming that the CBA has anything whatsoever to do with examinations it or Crawford orders under the Michigan WDCA.

In support of its false statement, Cassens cites an irrelevant part of the CBA, Article 41, which says that it applies to "examinations required by a government body or the Employer." Article 41 does not apply to the workers compensation examinations at issue in this case for any one of a host of reasons:

- The exams at issue were conducted pursuant to §385 or §315(1) of the WDCA and not pursuant to Article 41 of the CBA. Defendant has not produced any evidence showing that the examinations in this care were conducted under Article 41.

- Nothing in Article 41 gives empowers the employer to conduct examinations in Michigan workers compensation cases.

- The so-called "independant medical examinations" at issue in this case were set by Crawford & Company and not by defendant. Exhibit 2 is a typical examination notice in a workers compensation case. It was  issued by Crawford & Company to one of the plaintiffs, and not by defendant.

- Article 41 applies where a "government body" "requires" examinations. Michigan's

3

WDCA does not "require" examinations by a "government body," it *permits* an insurer to obtain an examination, under §385 and §315(1).

- Neither Article 41 nor any other article of the CBA provides that disputes arising under the WDCA shall be submitted to the grievance procedure, but it does provide that disputes arising under *other* state and federal statutes shall be arbitrated – see Article 26, exhibit 3.

- Article 41 applies to examinations concerning whether an employee is fit to drive under federal Dept. of Transportation regulations governing physical qualifications, and does not apply to examinations concerning whether an employee is entitled to workers compensation. See affidavits of Marshall Lasser, exhibit 4, and Terri Hewer, exhibit 5., which state that Cassens and other auto transporters have never used Article 41 in workers compensation cases, and have used Article 41 only in disputes over a worker's fitness to drive under DOT regulations.[1]

- Further proof that Article 41 does not apply to workers compensation disputes and applies only to disputes over fitness to drive under Dept. of Transportation rules is this language in Article 41: "If the two (2) doctors [one chosen by the employer and one chosen by the union] disagree, the Employer and the Union shall mutually agree upon a third (3rd) doctor whose decision *shall be binding on both parties*." If this language were applied to workers compensation litigation, it would supplant state law empowering the Workers Compensation Agency to determine an employee's entitlement to workers compensation.

---

[1] Mr. Hewer is a business agent who represents vehicle transporters in the Detroit area for Teamster Union Local 299, and Mr. Lasser has represented numerous Cassen's employees in claims for workers compensation benefits.

Obviously, the CBA cannot supersede an employee's right to have his entitlement to workers compensation benefits determined by Michigan's WDCA.[2] This is further proof Article 41 applies only to fitness to drive disputes arising under the DOT regulations.

- Cassens has never claimed, in any of the plaintiffs' workers compensation cases arising from the examinations of the plaintiffs, that the cases were pre-empted by the LMRA. Not once did defendant try to quash the state litigation on the grounds of pre-emption. See the affidavits of Terri Hewer, exhibit 5, and Marshall Lasser, exhibit 4.

Cassens asserts state law claims require interpretation of the CBA. Cassen's argument fails because it cited no part of the CBA which must be interpreted by judge or jury in any of the state law claims.

The CBA does not in any way regulate plaintiff's statutory right to workers compensation benefits. A Michigan worker seeking to enforce his statutory right to benefits must file a claim and may only file a claim with Michigan's Workers Compensation Agency (formerly the Bureau of Workers Disability Compensation). A worker cannot get his statutory benefits by filing a grievance under the CBA.

### III. THE MCCARRAN-FERGUSON ACT DOES NOT BAR PLAINTIFFS' RICO CLAIMS AGAINST CASSENS.

Cassens cites Judge Hood's opinion in *Yax v UPS and Liberty Mutual* in support of its

---

The affidavits of Lasser and Hewer, are proof Cassens has never used Article 41 to supplant the authority of the Agency.

argument that the McCarran-Ferguson Act preempts plaintiffs' RICO claims.  Judge Hood's

opinion should be disregarded because it completely failed to consider the controlling authority,

*Humana v Forsyth,* 525 US 299, 119 S Ct 710, 142 L Ed 2d 753 (1999).   That opinion did not

discuss *Humana.   Bristol Hotel Management Corp v Aetna Casualty & Surety Co,* 20 F Supp 2d

1345 (SD Fla 1998), cited by Judge Hood and by Cassens, has been superseded by *Humana.*

Furthermore, Cassen's argument fails because McCarran-Ferguson applies to insurance

companies and Cassens is not an insurance company.

Cassen's argument would fail even if it were an insurance company, because a RICO suit

claiming Cassens participated in an enterprise to fraudulently deny worker's compensation

benefits is not preempted by the McCarran Ferguson Act, under the test set forth in *Humana.*

*Humana* recognized a three prong test:

> When federal law [1] does not directly conflict with state regulation [of insurance], and
> [2] when application of the federal law would not frustrate any declared state policy or [3]
> interfere with a State's administrative regime, the McCarran-Ferguson act does not
> preclude its application.

Under this test, plaintiffs' case against Crawford & Company is not preempted.

1.    Under prong (1) of the *Humana* test, plaintiff's claim does not "directly
conflict" with state regulation of insurance

Plaintiffs' claims -- that defendants operated a scheme to fraudulently deprive them of

workers compensation benefits -- do not "directly conflict" with regulation of workers

compensation insurance benefits by the Michigan legislature or by the administrative organ

through which the state administers its insurance laws, the Michigan Insurance Bureau..  Cassens

has not shown that plaintiffs' claims in any way "directly conflict" with state regulation of

6

Michigan's workers compensation insurance scheme

Plaintiffs' claims do not "directly conflict" with Michigan's regulation of insurance because the Workers Disability Compensation Act is not a law "enacted... for the purpose of regulating the business of insurance." Michigan passed the WDCA to provide benefits to injured workers. This statutory purpose – to aid injured workers – can be easily discerned from the Michigan Compiled Laws, the WDCA, and Michigan case law:

- Michigan Compiled Laws places the WDCA in chapter 418, among the chapters dealing with labor. Had the WDCA been an insurance-regulation scheme, it would have been placed in the Insurance Code, in Chapter 500.

- Section 418.101 of the WDCA states, "This act shall be known and may be cited as the "worker's disability compensation act of 1969." That title indicates the purpose of the act is not to regulate insurance but to compensate disabled workers.

- The Michigan Supreme Court said in *McAvoy v H. B. Sherman Co.* 401 Mich 419, 258 NW2d 414 (1977), that the "primary goal" of the workmen's compensation scheme is delivery of sustaining benefits to the disabled employee as soon as possible after injury occurs regardless of any traditional tort concepts of liability. The Court said in *Whetro v Ackerman,* 383 Mich 235 at 242 (1970):

> The purpose of the compensation act as set forth in its title is to promote the welfare of the people of Michigan relating to the liability of employers for injuries or death sustained by their employees.

Similarly, the Court of Appeals said:

> The purpose of the workers' compensation act is to recompense employees for disabling injuries received in the course of their employment. *Sanders v General Motors Corp,* 137 Mich App 456, 358 NW2d 611 (1984).

7

The WCDA exists to protect workers, not to regulate insurance, according to these decisions of the Michigan courts.

- The Michigan Insurance Bureau does not regulate Michigan workers compensation insurance. The Department of Consumer and Industry Services and not the Insurance Bureau has jurisdiction over Michigan workers compensation,. This is further proof the WDCA is not a law regulating insurance, but one aimed at providing benefits to injured workers, and that plaintiffs' claims do not impinge on state regulation of insurance.

Because the purpose of the WDCA is to help injured workers and not to regulate the workers compensation insurance business, plaintiffs' claims do not "directly conflict" with the regulation of insurance.. Even if the WDCA does regulate insurance, Cassens has not shown that plaintiffs' claims "directly conflict" with Michigan's regulation of that insurance. Under prong (1) of the Humana test, the McCarran-Ferguson Act does not apply to plaintiffs' RICO claims.

> 2.     Under prong (2) of the *Humana* test, plaintiff's claims would not "frustrate any declared state policy."

Cassens has not shown that plaintiffs' claims would frustrate a declared state policy. Cassens has the burden of proof on this issue, and it has not met it

To the contrary, plaintiff's claims would *promote* state policy.  The Supreme Court of Michigan has declared the primary goal of the state's workmen's compensation scheme is delivery of sustaining benefits to the disabled employee as soon as possible after injury, *McAvoy v H. B. Sherman Co.* 401 Mich 419, 258 NW2d 414 (1977).  If successful, plaintiff's suit would strongly encourage Cassens and Crawford to pay valid claims rather than fraudulently deny them.

8

This would fulfill the purpose declared by the state's Supreme Court.

The Notices of Dispute which are at the core of plaintiffs' case state that civil and criminal actions may result from a claim adjuster's fraud. The form issued by the Workers Compensation Agency warns the claim adjuster:

> Making a false or fraudulent statement for the purpose of ... denying benefits can result in criminal or civil prosecution, or both....

Thus the Agency *agrees* with plaintiffs that their RICO suit does not interfere with the state's policy. The Agency *recognizes* that a insurer may be subject to "civil prosecution" – such as a RICO suit – if it denies benefits fraudulently. The Agency's form proves this suit promotes state policy rather than frustrates it. Exhibit 6 is a Notice of Dispute (identical to exhibit 5 to Cassen's brief) with the key language highlighted.

3.    Under prong (3) of the *Humana* test, plaintiff's claims would not "interfere" with Michigan's worker's compensation insurance regime.

Cassens presented no plausible reason why plaintiff's RICO suit would interfere with Michigan's workers compensation regime, or its insurance regime. Cassens has not met its burden of proof. In fact, there is no conflict between this case and those regimes.

### IV. PLAINTIFFS HAVE STATED RICO CLAIMS UPON WHICH RELIEF MAY BE GRANTED

9

A.  Plaintiffs Have Pled Mail and Wire Fraud with Particularity

Cassens claims "the only communications which Plaintiffs' allege were made to them by the Defendants are copies of mailed Notices of Dispute... and telephone conversations to two plaintiffs..." (Brief, 18, emphasis by Cassens)  Cassens omits the allegations in paragraph 41A. Plaintiffs also alleged defendants made fraudulent statements in affidavits.   Plaintiffs cited affidavits submitted by Tina Litwiller and Kathy Conner.

Cassens claims that plaintiffs have not alleged mail and wire fraud "with particularity." Not so. The telephone and postal communications described in the complaint are alleged "with particularity" as to time, place, mailer, recipient, subject matter and the connection with the fraudulent scheme.  See paragraphs 14, 15, 23, 24, 35, 41 41A, 48 58, and 69 of the complaint).[3]

---

For example, paragraphs 8 and 9 provide:

8.    On Dec. 12, 2001, William Fanaly injured his right foot during the course and scope of employment with Cassens, while he was to his Cassens car-hauling truck.  He missed work and sustained medical bills and wage loss due to this injury.  On Dec. 14, 2001, plaintiff reported the injury to defendants, and requested workers compensation benefits.  Plaintiff reported that he was coming out of the motel where he had parked the Cassens truck and stayed overnight (he was on an interstate trip with the company truck, driving from Detroit, MI, to Fenton, MO).  He reported that he was walking to the truck to get into it to drive it to Cassen's terminal when he missed a step and fell, injuring his foot.  Crawford's claim adjuster, Tina Litwiller, denied the claim, stating to plaintiff on the telephone in an interstate conversation from St. Louis, MO, to Detroit, MI, that because the injury happened at a motel, it did not happen on the job.

9.    On Dec. 19, 2001, Tina Litwiller, a claim adjuster for Crawford & Company in St. Louis, MO, sent to plaintiff in Westland MI, via the US mail, a Notice of Dispute concerning the injury of Dec. 12, 2001, which stated that workers compensation benefits were denied because "injury not work related." This statement and the earlier telephone statement were fraudulent communications in violation of 18 USC sections 1341 and 1343 because the corporate defendants knew that an injury which happens to an employee while he

Cassens' argument fails in light of the detail plead by plaintiffs.

More importantly, the Supreme Court has held the particularity requirement must be "relaxed" in civil RICO cases where plaintiff invokes MRCP 11(b)(3), which allows pleadings based on evidence "reasonably anticipated after further investigation or discovery." *Rotella v Wood*, 528 US 549 at 560, 120 S Ct 1075, 145 L Ed 2d 1047 (2000) held such pleadings are proper despite the language of FRCP 9(b). The Court said the particularity requirements of 9(b) are to be "relaxed... where RICO plaintiff lacks access to all facts necessary to detail claims." Nowhere does Cassens discuss the impact of *Rotella* on its argument, or on the pre-*Rotella* Sixth Circuit cases on which Cassens relies.

Although *Rotella* addressed primarily whether a discovery rule should toll the statute of limitations, it also focused on the particularity-in-pleading issue:

> Finally, Rotella returns to his point that RICO patterns will involve fraud in many cases, when he argues that unless a pattern discovery rule is recognized, a RICO plaintiff will sometimes be barred from suit by FRCP 9(b), which provides that fraud must be pleaded with particularity. While we assume that Rule 9(b) will exact some cost, we are wary of allowing speculation about that cost to control the resolution of the issue here. Rotella has presented no case in which Rule 9(b) has effectively barred a claim like his, and he ignores *the flexibility provided by Rule 11(b)(3), allowing pleadings based on evidence reasonably anticipated after further investigation or discovery.* See, eg, *Corley v Rosewood Care Center, Inc. of Peoria*, 142 F. 3d 1041, 1050-1051 (CA7 1998) *(relaxing particularity requirements of Rule 9(b) where RICO plaintiff lacks access to all facts necessary to detail claim).* [Emphasis supplied]

Under *Rotella,* Cassen's claim that plaintiffs failed to plead fraud with particularity should be rejected.    Plaintiffs' complaint repeatedly invoked Rule 11(b)(3) and pled "evidence reasonably anticipated after further investigation or discovery." See paragraphs 12, 16A, 18, 19,

---

is leaving his motel during the course and scope of employment is an injury which is compensable under the Act.

20, 26, 27, 32, 34 and so on.[4] Plaintiffs alleged they "lacks access to all facts necessary to detail" their claims until they take discovery.   Because they invoked Rule 11(b)(3), *Rotella* holds that Cassen's motion should be denied.

*New England Data Services v Becher*, 829 F2d 286 (1987), is further authority for rejecton of defendant's argument that plaintiffs failed to plead with particularity. *New England* (decided thirteen years before *Rotella*) held that failure to plead fraud with particularity does not automatically justify dismissal "where, for example, the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant."   In this circumstance, "the court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint."   Emphasis by the court at 829 F2d 286, 290. This language applies here, *because only Cassens, Crawford and Dr. Margules have knowledge of communications between them.* Plaintiffs need discovery to identify persons, dates, etc

Whatever remains of Cassens' claim that plaintiffs' allegations are defective because they lacked particularity, that defect, if any, may be cured by discovery.   *Rotella* mandated that

---

[4]   For example:

12. Defendants expressly or implied communicated to Dr. Margules that it wanted him to write reports stating plaintiff was not disabled due to work-related injuries, regardless of the true circumstances. Defendants' actions violated 18 USC §1341, 1343, and 1512. These communications were by mail and wire and are not in the possession of plaintiff but are in the possession of defendants. This allegation is based in part on information and belief, and are likely to have evidentiary support after a reasonable opportunity for investigation and discovery.

plaintiff be permitted discovery to cure Rule 9(b) defects, given especially where the complaint invoked Rule 11(b)(3), as plaintiffs' complant did here, repeatedly.[5]

Cassens also fails to mention that plaintiffs repeatedly pled the predicate crime of witness tampering/obstruction of justice in violation of 18 USC §1512, in paragraphs 12, 16A, 32 and 34A of the complant.    Plaintiffs' case does not depend on mail and wire fraud alone.    This additional element distinguishes plaintiffs' case from the pre-*Rotella* decisions of the Sixth Circuit, which involved only claims of mail and wire fraud.

Cassens does not mention that plaintiffs also pled a *scheme to defraud,* not merely fraudulent postal and wire communications.    This fact also distinguishes plaintiffs' case from the pre-*Rotella* Sixth Circuit decisions upon which Cassens relies. Several circuits (but not the Sixth) have held that plaintiff need not prove reliance on a mailed misrepresentation *where plaintiff pleads damage caused by defendant's fraudulent scheme.* See *Chisolm v TranSouth Financial Corp,* 95 F 3d 331 (4th Cir 1996), *Proctor & Gamble Co v Amway Corp,* 242 F3d 539 (5th Cir 2001), *Tabas v Tabas,* 47 F3d 1280 (3d Cir1995 en banc), cert den 515 US 1118 (1995), *United Healthcare v American Trade Ins Co Ltd,* 88 F3d 563 (8th Cir 1996).    The Eighth Circuit said in *United Healthcare* that "'even a routine mailing (or wire use), or one sent for a legitimate business purpose" could satisfy the mailing requirement "so long as it assists.... in carrying out the fraud'.", 88 F2d at 371, quoting *United States v Leyden,* 842 F2d 1026, 1028 (8th Cir 1988).

---

[5]    Cassens cites a slew of Sixth Circuit cases in support of its claim that plaintiff has failed to plead mail or wire fraud with particularity.    These cases were decided before *Rotella* and are no longer authority that mail and wire fraud must *always* be alleged with particularly.    (In any case, plaintiffs did allege fraud with particularity.)

13

Following *Chisholm,* a district court distinguished between RICO cases that are based upon affirmative misrepresentation, wherein a reliance requirement is appropriate, and those such as the present case which are based upon a broader scheme to defraud, *D'Addario v Geller,* 264 F Supp 2d 367 (ED Va 2003). Likewise, the Fifth Circuit in *Proctor & Gamble,* supra, held reliance is not necessary in a case bottomed on mail or wire fraud when it is clear defendants' fraudulent activity allegedly caused plaintiff's damages. The Third Circuit in *Tabas,* supra, held that even wholly innocent mailings can satisfy the mailing element of fraud, and therefore the mailings need not be relied upon by the victim. This abundance of rulings from the circuit courts rebuts Cassen's claim plaintiffs must prove they relied upon mail fraud proximately causing him damage. The gist of these cases is that even if the Notices of Dispute mailed by Cassens were not fraudulent (but they are!), they could still form the basis of a mail fraud claim where the mailings were part of a scheme to defraud plaintiffs.

Cassens argues the Notice of Dispute, as "a mere business communication demonstrating a dispute over a Plaintiff's workers compensation claim, cannot be sufficient to support a claim of mail or wire fraud as a matter of law." (Brief 18) This is nonsense. If the Notice of Dispute is intended to defraud an injured worker out of his benefits, it is illegal. The best evidence of this illegality is the stark warning contained within the Notice of Dispute (exhibit 6, and exhibit 5 to Cassens' brief):

> *Making a false or fraudulent statement for the purpose of.... denying benefits can result in criminal or civil penalties, or both....*

      B.  Plaintiffs are Not Required to Plead Detrimental Reliance for the Purposes of RICO, but They Did Anyway

14

Cassens asserts RICO claims of mail/wire fraud cannot be maintained absent evidence plaintiffs detrimentally relied upon a misrepresentation or omission of material fact. Cassens cites three cases from the Court of Appeals for the Sixth Circuit, the most recent of which is eight years old. Those cases are no longer valid law. The Supreme Court has since held that a RICO fraud claim need *not* involve reliance.

In *Neder v United States,* 527 US 1 at 24, 119 S Ct 1827, 144 Led 2d 35 (1999), the Court said:

> The common-law requirements of "justifiable reliance" and "damages," for example, plainly have no place in the federal fraud statutes. See, eg, *United States v Stewart,* 872 F2d. 957, 960 (CA 10 1989) ("[Under the mail fraud statute,] the government does not have to prove actual reliance upon the defendant's misrepresentations").... " [Emphasis supplied]

> *Systems Management, Inc v Louiselle,* 303 F3d 100 (2002), also recently held that reliance

is not a required element of a RICO civil suit based on mail or wire fraud. Under *Neder* and *Systems Management,* this court should reject Cassen's claim that plaintiffs' complaint is deficient insofar as it fails to allege detrimental reliance.[6]

Cassens claims that plaintiff must plead reliance on misrepresentation proximately causing

---

[6] There is also no requirement of misrepresentation. Any dishonest scheme will do. For example, the Supreme Court has held that embezzlement may be a violation of the mail fraud statute even though embezzlement requires no misrepresentation:

> "As we observed last term in *McNally,* the words "to defraud" in the mail fraud statute have the "common understanding" of 'wronging one in his property rights by dishonest methods or schemes and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'...The concept of "fraud" includes the act of embezzlement, which is "'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'" " *Carpenter v United States,* 484 US 19 at 27 (1987)

injury. Not so. Neither the RICO act nor any interpretation of that act by the Supreme court has required that plaintiff prove reliance on a specific misrepresentation caused him injury. To the contrary, several circuits have held that plaintiff need not prove reliance on a mailed misrepresentation *where plaintiff pleads damage caused by defendant's fraudulent scheme.* See *Chisolm v TranSouth Financial Corp,* 95 F 3d 331 (4th Cir 1996), *Proctor & Gamble Co v Amway Corp,* 242 F3d 539 (5th Cir 2001), *Tabas v Tabas,* 47 F3d 1280 (3d Cir1995 en banc), cert den 515 US 1118 (1995), *United Healthcare v American Trade Ins Co Ltd,* 88 F3d 563 (8th Cir 1996). The Eighth Circuit said in *United Healthcare* that "'even a routine mailing (or wire use), or one sent for a legitimate business purpose" could satisfy the mailing requirement "so long as it assists.... in carrying out the fraud'.", 88 F2d at 371, quoting *United States v Leyden,* 842 F2d 1026, 1028 (8th Cir 1988).

Following *Chisholm,* a district court distinguished between RICO cases that are based upon affirmative misrepresentation, wherein a reliance requirement is appropriate, and those such as the present case which are based upon a broader scheme to defraud, *D'Addario v Geller,* 264 F Supp 2d 367 (ED Va 2003). Likewise, the Fifth Circuit in *Proctor & Gamble,* supra, held reliance is not necessary in a case bottomed on mail or wire fraud when it is clear defendants' fraudulent activity allegedly caused plaintiff's damages. The Third Circuit in *Tabas,* supra, held that even wholly innocent mailings can satisfy the mailing element of fraud, and therefore the mailings need not be relied upon by the victim. This abundance of rulings from the circuit courts rebuts Cassen's claim plaintiffs must prove they relied on fraudulent misrepresentations proximately causing them damage.

Furthermore, because plaintiffs alleged not only mail and wire fraud *but also violation of*

16

*18 USC 1512*, they are not required to prove justifiable reliance. In short, plaintiffs have pled a series of predicate acts for which proof of justifiable reliance is not required.

Nevertheless, if reliance on misrepresentation proximately causing injury must be pled, plaintiffs have met their burden of pleading. They alleged that in reliance on defendants' fraudulent mailings, they proximately suffered injury: Each plaintiff pled:

> Plaintiff relied on defendant's fraudulent communication to the extent he suffered the financial loss of having to pay attorney fees, medical bills and medical mileage. Defendants' fraud directly caused injury to plaintiff because it deprived him of workers compensation benefits and because it caused him the expense of paying attorney fees, medical bills and mileage to and from medical care.

This pleading meets the requirement, if it exists, that plaintiffs plead damage proximately caused by defendants' misrepresentations. Plaintiffs have pled both justifiable reliance and proximate causation, if such is required.

## V.  PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE DOCTRINE OF PRIMARY JURISDICTION

Cassens asserts, "Plaintiffs argue, in essence, that Cassens has wrongfully disputed their workers compensation claims...." (Brief 20).    Not true.    Plaintiffs claim Cassens has *fraudulently deprived* them of their benefits – not merely disputed the benefits, but schemed dishonestly to cheat plaintiffs of their benefits.

Cassens then argues, "Plaintiffs' claims are within the unique expertise of the Bureau of Workers Compensation."    False again.    The Agency (formerly the Bureau) *has no jurisdiction to hear plaintiffs' claims of fraud.*    The Agency decides only if benefits are due an injured worker, not whether the worker may obtain damages for fraud.

17

The abstention or primary jurisdiction doctrine argument is not applicable to this case *Burford v Sun Oil Co*, 319 US 315, 63 S Ct 1098, 87 L Ed 1424 (1943), held that dismissal of a complaint is appropriate if the matter involves an issue of substantial state concern and the state has devised a comprehensive regulatory scheme for resolution of such matters in a uniform matter. *Burford* and the cases cited by Cassens are inapplicable because Michigan's Workers Disability Compensation Act, MCL 418, 101 et seq, does not provide *any* scheme for resolution of the fraud claim made in this case, let alone a "comprehensive regulatory scheme."

Numerous post-*Burford* cases applying it to RICO claims have held that the involvement of federal law in RICO cases negates abstention, *New Beckley Mining Corp v United Mine Workers of America*, 946 Fed 1072 (4th Cir 1991), *Taffeta V Southern Co*, 930 F 2d 847 (11th Cir 1991), *County of Suffolk v Long Island Lighting Co*, 907 F 2d 1295 (2d Cir 1990), *Waddell & Reed Fin Inc v Torchmark Corp*, 180 F Supp 2d 1235 (D Kan 2001).

Cassens has failed to cite *Rouse v DaimlerChrysler Corp*, 300 F3d 711 (6th Cir 2002), which sets forth the law in the Sixth Circuit as to how *Burford* should be applied. *Rouse* negates Cassen's argument that this court should abstain.. *Rouse* said:

> "[t]he *Burford* abstention should not be applied unless: (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." 300 F3d at 716

18

Plaintiffs' case does not present "difficult questions of state law" and does not "bear on policy problems of substantial public import whose importance transcends the result in the case then at bar." Nor would this case "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Cassens has presented no proof of these elements. Under *Rouse*, this court should not abstain.

The Notices of Dispute filed by defendants contemplate that a civil action – such as this case – may result from an insurer's fraud. This form (exhibit 5 to Cassen's brief) warns the insurer:

> *Making a false or fraudulent statement for the purpose of obtaining or denying benefits can result in criminal or civil prosecution, or both....*

The form *italicizes* this warning, apparently for emphasis. This warning shows the Workers Compensation Agency agrees with plaintiff that workers compensation fraud may result in a civil action for fraud separate and apart from the workers compensation case.

For these reasons, the doctrine of primary jurisdiction does not bar plaintiffs' suit.


V.    PLAINTIFFS' CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED AND SHOULD NOT BE DISMISSED


Plaintiffs incorporate their response to Crawford's argument that their claims for intentional infliction of emotional distress should be dismissed.

19

RELIEF REQUESTED

Plaintiffs request that defendant's motion be denied.


Marshall Lasser PC, by
Marshall Lasser P25573
P.O. Box 2579
Southfield, MI 48307
248 647 7722   fax 248 647 1917


Date:   October 18, 2004


C:\wp51\DOCS\cassens\ResponseCassensMot.wpd



asonable distance from that
orm shall not be limited to jobs in

e period of confinement to a person
of the criminal laws of this state or
or a violation of the criminal laws of
nent occurred while at work and is

in any manner discriminate against
laint or instituted or caused to be
f the exercise by the employee on
ed by this act.

and work related diseases occurring

Eff. Dec. 23, 1986;—Am. 1987, Act 28, Imd. Eff. May 14,

118.213.

resulting from personal injury, was repealed by Act 103 of

is intentional and wilful misconduct,
is of this act.

ions.

is act for any injury which does not
or a period of at least 1 week, but if
npensation shall begin on the eighth
eks or longer or if death results from
date of the injury.

fined; tables.

rage weekly wage" means average
the prorated weekly amount which
contributions act, 26 U.S.C. 3101 to
lated on an annual basis using as the
lependents plus the employee, and
nuary 1, 1982, and each January 1
ffect on the preceding July 1 shall be

bles of the average weekly wage and
in effect on the following January 1.
converting an average weekly wage

r. 10, 1982.

**418.315 Furnishing medical care for injury arising out of and in course of employment; optometric service; attendant or nursing care; selection of physician by employee; objection; order; other services and appliances; proration of attorney fees; fees and other charges subject to rules; advisory committee; excessive fees or unjustified treatment, hospitalization, or visits; review of records and medical bills; utilization review; effect of accepting payment; submitting false or misleading information as misdemeanor; penalty; improper overutilization or inappropriate health care or health services; appeal; criteria or standards; certification; unusual health care or service.**

Sec. 315. (1) The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed. However, an employer is not required to reimburse or cause to be reimbursed charges for an optometric service unless that service was included in the definition of practice of optometry under section 17401 of the public health code, 1978 PA 368, MCL 333.17401, as of May 20, 1992. An employer is not required to reimburse or cause to be reimbursed charges for services performed by a profession that was not licensed or registered by the laws of this state on or before January 1, 1998, but that becomes licensed, registered, or otherwise recognized by the laws of this state after January 1, 1998. Attendant or nursing care shall not be ordered in excess of 56 hours per week if the care is to be provided by the employee's spouse, brother, sister, child, parent, or any combination of these persons. After 10 days from the inception of medical care as provided in this section, the employee may treat with a physician of his or her own choice by giving to the employer the name of the physician and his or her intention to treat with the physician. The employer or the employer's carrier may file a petition objecting to the named physician selected by the employee and setting forth reasons for the objection. If the employer or carrier can show cause why the employee should not continue treatment with the named physician of the employee's choice, after notice to all parties and a prompt hearing by a worker's compensation magistrate, the worker's compensation magistrate may order that the employee discontinue treatment with the named physician or pay for the treatment received from the physician from the date the order is mailed. The employer shall also supply to the injured employee dental service, crutches, artificial limbs, eyes, teeth, eyeglasses, hearing apparatus, and other appliances necessary to cure, so far as reasonably possible, and relieve from the effects of the injury. If the employer fails, neglects, or refuses so to do, the employee shall be reimbursed for the reasonable expense paid by the employee, or payment may be made in behalf of the employee to persons to whom the unpaid expenses may be owing, by order of the worker's compensation magistrate. The worker's compensation magistrate may prorate attorney fees at the contingent fee rate paid by the employee.

(2) Except as otherwise provided in subsection (1), all fees and other charges for any treatment or attendance, service, devices, apparatus, or medicine under subsection (1), are subject to rules promulgated by the bureau of worker's compensation pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328. The rules promulgated shall establish schedules of maximum charges for the treatment or

Case 2:04-cv-72316-PDB-WC    Document 19    Filed 10/19/2004    Page 26 of 38

## 418.385  Physical examination of employee; payment; report; copy; evidence; failure of party to provide medical report.

Sec. 385. After the employee has given notice of injury and from time to time thereafter during the continuance of his or her disability, if so requested by the employer or the carrier, he or she shall submit himself or herself to an examination by a physician or surgeon authorized to practice medicine under the laws of the state, furnished and paid for by the employer or the carrier. If an examination relative to the injury is made, the employee or his or her attorney shall be furnished, within 15 days of a request, a complete and correct copy of the report of every such physical examination relative to the injury performed by the physician making the examination on behalf of the employer or the carrier. The employee shall have the right to have a physician provided and paid for by himself or herself present at the examination. If he or she refuses to submit himself or herself for the examination, or in any way obstructs the same, his or her right to compensation shall be suspended and his or her compensation during the period of suspension may be forfeited. Any physician who makes or is present at any such examination may be required to testify under oath as to the results thereof. If the employee has had other physical examinations relative to the injury but not at the request of the employer or the carrier, he or she shall furnish to the employer or the carrier a complete and correct copy of the report of each such physical examination, if so requested, within 15 days of the request. If a party fails to provide a medical report regarding an examination or medical treatment, that party shall be precluded from taking the medical testimony of that physician only. The opposing party may, however, elect to take the deposition of that physician.

History: 1969, Act 317, Eff. Dec. 31, 1969;—Am. 1985, Act 103, Imd. Eff. July 30, 1985.

Compiler's note: For legislative intent as to severability, see Compiler's note to § 418.213.

## 418.391  Compensation supplement fund; creation; administration; appropriation; rules; payments; personnel; recommendations; carrying forward unexpended funds; reduction of appropriation; report; reimbursement of insurers, self-insurers, second injury fund, and self-insurer's security fund; certification; application.

Sec. 391. (1) The compensation supplement fund is created as a separate fund in the state treasury. The fund shall be administered by the state treasurer pursuant to this section. The legislature shall appropriate to the compensation supplement fund from the general fund the amounts necessary to meet the obligations of the compensation supplement fund under section 352, and the administrative costs incurred by the bureau under this section.

(2) The director shall promulgate rules pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, that prescribe the conditions under which the money in the compensation supplement fund shall be expended pursuant to section 352 and this section.

(3) The department of treasury shall cause to be paid from the compensation supplement fund those amounts and at those times as are prescribed by the director pursuant to subsection (2).

(4) The director may employ the personnel the director considers necessary for the proper administration of the compensation supplement fund.

(5) The director shall annually recommend to the governor and the chairpersons of the senate and house appropriations committees the amount of money the director considers

necessary to implement and year. The compensation sup any unexpended funds, an unobligated balance in the f

(6) Not later than April 1 and the legislature summar during the preceding calend that receives a reimbursem amount of reimbursement.

reimbursements required pu to the governor and the leg The director shall certify to the identity of each insure section 352(8) and the amo that insurer or self-insurer to

(7) Pursuant to section 3 of the insurance code of 1 500.440a of the Michigan ( Act No. 228 of the Public A Laws, the second injury reimbursement from the reimbursement shall be on Application for a claim for be filed with the directo reimbursement first accrue self-insurers' security fund compensation supplement f quarter. A reimbursement before the date of the filing A reimbursement shall not insurer or self-insurer takes

History: Add. 1980, Act 357, Eff. Jan.

OCCUPA1

## 418.401  Definitions; d benefits; notice to N in finding employ employment; term defined; personal in applicable.

Sec. 401. (1) As used in wage earning capacity in w from a personal injury or v create a presumption of wa





January 23, 2001


Paul Brown
20901 E Trebesh Circle
Pickney, MI 48234

RE:    Employee:    Paul Brown
       Employer:    Cassens Inc.
       Acc Date:    04/12/00
       Our File:    960-000068392
       Claim No:
       Our Client: 006626-Cassens Transport Company

We administer the Workers' Compensation Claims for the above
captioned employer.

We have scheduled an appointment for you to be evaluated by Dr.
Parsad. His address is 25899 W 12 Mile Rd, Suite 200, Southfield MI
48034. His telephone number is 248-352-6747. This is for purposes of
a second opinion.

We know the Doctor will appreciate your being prompt and if, for any
reason, you are unable to keep this appointment, please notify this
office immediately.

PLEASE BRING WITH YOU ALL X-RAYS, MRI FILM'S, with you to this
appointment.

If you have any questions, please do not hesitate to contact our
office.


Sincerely,



Tina Litwiller
Adjuster



**Article 24**

sion for the entire period thereof, subject however to the seniority and layoff provisions applicable to the employee at time of the suspension.

An employee unable to successfully pass the D.O.T. Commercial Driver's License (CDL) examination will be allowed to retain seniority for a period not to exceed one (1) year provided the employee makes a good faith effort to pass the test each time the opportunity presents itself. During this time of absence the Employer shall have no obligation to make health and welfare or pension contributions on behalf of the employee.

## ARTICLE 25.
### PASSENGERS

No driver shall allow anyone, other than employees of the Employer who are on duty, to ride on the driver's truck, except by written authorization of the Employer, or except in cases of emergency arising out of disabled commercial equipment or an Act of God. This shall not prohibit drivers from picking up other drivers, helpers or others at wrecked or broken down motor equipment and transporting them to the first available point of communication, repair, lodging or available medical attention. This shall not prohibit the transportation of drivers from the driver's own Employer at a delivery point or terminal to a restaurant for meals where permission has been granted.

## ARTICLE 26.
### NONDISCRIMINATION

The Employer and the Union agree neither to discriminate against any individual with respect to hiring, compensation, terms or conditions or privileges of employment because of such individual's age, race, color, religion, sex, national origin, or disability, nor will they limit, segregate or classify employ-

80

---

**Article 26**

ees in any way to deprive any individual employee of employment opportunities because of age, race, color, religion, sex or national origin or disability.

The Union and Employer agree to abide by the provisions of the Americans with Disabilities Act or pertinent state laws. The Employer shall negotiate with the Local Union before providing a reasonable accommodation to a qualified bargaining unit employee. Any disputes arising under this provision shall be subject to the grievance procedure.

Nothing herein (in seniority or other provisions contained in this National Master Agreement or any approved Area Supplement) shall be construed or applied to deny to any employee the employment opportunities set forth above.

Any alleged denial of the aforesaid opportunities in violation of this Article shall be submitted to the grievance procedure.

In those terminals where classification seniority applies, the parties agree that in filling vacancies with qualified employees which occur subsequent to the execution of this Agreement, the principle of carry-over terminal seniority shall be recognized. In the event that the Employer and the Local Union fail to formulate a Rider which provides for the filling of vacancies consistent with the foregoing provision, the Joint Area Committees shall have such authority.

## ARTICLE 27.
### ROAD AND/OR DRIVING EQUIPMENT
### SPECIAL LICENSE

If the Employer or a government agency requests a regular employee to qualify on road and/or driving equipment requiring a classified or special license (including a CDL), or in the event an employee is required to qualify (recognizing seniority) on such equipment in order to obtain a better job opportunity with the Employer, the Employer shall allow such regular employee the use of the equipment so required in or-

81



UNITED STATES DISTRICT COURT

IN THE EASTERN DISTRICT OF MICHIGAN

PAUL BROWN, WILLIAM FANALY,
CHARLES THOMAS GARY RIGGS,                        Case No.: 04-CV 72316
ROBERT ORLIKOWSKI, SCOTT WAY,    Plaintiffs,

                          v

CASSENS TRANSPORT COMPANY and
CRAWFORD & COMPANY, foreign corporations, and DR. SAUL MARGULES,
Defendants.

_____/

Marshall Lasser P25573
MARSHALL LASSER PC
Attorney for plaintiffs
P.O. Box 2579
Southfield MI 48037
248-647-7722

_____/

AFFIDAVIT OF MARSHALL LASSER

Marshall Lasser states under oath and from personal knowledge:

1  He has represented dozens of employees of Cassens, E&L Transport, Allied,

Leaseway and other vehicle transporters subject to the same CBA, in Michigan workers

compensation litigation.  Never in any of these cases has any of these employers who are self-

insured for MI workers compensation attempted to apply the examination provisions of article

41 in lieu of §385 of the Michigan Workers Disability Compensation Act.    The self-insured

employers require workers to submit to examinations under §385 or 315(1).

2.  Cassens and Crawford have never sought to quash any of plaintiffs' workers

compensation cases on the ground they were preempted by the Labor Management Relations

1

Act.

     3. Exhibit 2 is a document from Paul Brown's workers compensation case. Exhibit 2 was sent to Mr. Brown by Tina Litwiller of Crawford & Company.

_____

Marshall Lasser

subscribed and sworn to before me:

Delilah Talon, notary public, county of _Wayne_
acting in Oakland County
my commission expires ___2-20-06___
Date:   October 15, 2004
F:\wp51\DOCS\cassens\AffidavitLasser.wpd

2



UNITED STATES DISTRICT COURT

IN THE EASTERN DISTRICT OF MICHIGAN

PAUL BROWN, WILLIAM FANALY,
CHARLES THOMAS GARY RIGGS,                    Case No.: 04-CV 72316
ROBERT ORLIKOWSKI, SCOTT WAY,    Plaintiffs,

                    v

CASSENS TRANSPORT COMPANY and
CRAWFORD & COMPANY, foreign corporations, and DR. SAUL MARGULES,
Defendants.
_____/

Marshall Lasser P25573
MARSHALL LASSER PC
Attorney for plaintiffs
P.O. Box 2579
Southfield MI 48037
248-647-7722
_____/

AFFIDAVIT OF TERRY HEWER

Terry Hewer states under oath and from personal knowledge:

1. He is a business agent from Teamster Local 299 in Detroit, and has been since 1997,
and in that capacity has represented Cassens employees.

2. He has represented dozens of employees of Cassens, Allied, E & L Transport, and other
vehicle haulers subject to the the National Master Automobile Transporters Agreement and the
Central and Southern Areas Supplemental Agreements, and never has any of these employers
attempted to apply the physician examination provisions of article 41 in lieu of §385 of the
Michigan Workers Disability Compensation Act.

3.   To his knowledge neither Cassens nor any of the auto transporters have ever sought to

1

quash by means of a grievance or other legal process any Michigan workers compensation cases

on the ground they were preempted by the Labor Management Relations Act.

4. In all the grievances he has handled for auto haulers, Article 41 applied only to situations

where the company wants to determine whether a driver is able to do his job under federal

Department of Transportation regulations, not whether he is disabled under the Michigan Workers

Disability Compensation Act.

Terry Hewer

Subscribed to and sworn before me

Notary Public, County of Wayne
dated September 30, 2004
my commission expires_____

MARY ANN KALEP
NOTARY PUBLIC WAYNE CO., MI
MY COMMISSION EXPIRES Nov 4, 2006

F:\wp51\DOCS\cassens\AffidavitHewer2.wpd

2



# NOTICE OF DISPUTE

Michigan Department of Consumer & Industry Services
Bureau of Workers' Disability Compensation
P O Box 30016, Lansing, MI 48909

| 1. Social Security No. | 2. Date of Injury | 3. Employee Name (Last, First, MI) | | |
|---|---|---|---|---|
| 4. Employee Address (Street No. and Name) | | 5. City | 6. State | 7. Zip Code |
| 8. Employer Name | | | | 9. Federal ID No. |
| 10. Employer Street Address | | 11. City | 12. State | 13. Zip Code |
| 14. Carrier or Self-Insured Name | | | 15. NAIC or Self-Insured No. | 16. Zip Code |
| 17. Service Company/TPA Name (if applicable) | | | 18. Service Co./TPA ID No. | 19. Zip Code |
| 20. Claim or File No. | | 21. County of Injury | | 22. County Code (if known) |

23. Reason For Dispute

A. _____ Injury not work related

B. _____ Medical treatment not related to injury

C. _____ Further investigation required (please specify below)

D. _____ Additional information required from employee (please specify below)

E. _____ Vocational rehabilitation dispute only (please specify below)

F. _____ Other (please specify below)

---

| *Making a false or fraudulent statement for the purpose of obtaining or denying benefits can result in criminal or civil prosecution, or both, and denial of benefits.* | Authority: Workers' Disability Compensation Act, R408.33(1)<br>Completion: Mandatory<br>Penalty: Workers' Disability Compensation Act, 418.631; 418.801; R408.33 |
|---|---|

This is to certify that a copy of this form has been mailed or given to the injured employee.

| 24. Preparer Name (Please print) | 25. Signature | 26. Telephone No. | 27. Date |
|---|---|---|---|

## NOTICE TO EMPLOYEE

By filing this form, your employer or its workers' compensation insurance company has indicated to the Bureau of Workers' Disability Compensation that it has a question or a dispute concerning the possible workers' compensation benefits to which you may be entitled. You may or may not agree with the position taken by the employer or insurance company.

If you feel that you are not receiving the benefits to which you are entitled, you should discuss this with your employer or a representative of its insurance company. If you have already done that or you are not satisfied with the discussion, you may request an informal conference or file a formal application for mediation or hearing. You can obtain the appropriate forms or more information by contacting the Bureau of Workers' Disability Compensation at one of the offices listed below.

**DETROIT**
State of Michigan Plaza Building
1200 Sixth Street, 12th Floor
(313) 256-2770

**ESCANABA**
State Office Building
305 Ludington
(906) 786-2081

**FLINT**
Bristol West Center
G-1388 West Bristol Road
(810) 760-2618

**GRAND RAPIDS**
2942 Fuller Street N.E.
(616) 447-2670

**KALAMAZOO**
940 N. 10th Street
(616) 544-4440

**LANSING AREA**
2501 Woodlake Circle, Okemos
(517) 241-9393

**MOUNT CLEMENS**
10th Floor, Old County Building
10 N. Main
(810) 463-6577

**PONTIAC**
NBD Building
28 N. Saginaw, Suite 1310
(810) 334-2497

**SAGINAW**
State Office Building
411-K East Genesee
(989) 758-1768

**TDD in Lansing**
(517) 322-5987

BWC-107 (Rev. 11/00)